**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| JON FREY, ANDREW PERRONG and STEWART ABRAMSON on behalf of themselves and others similarly situated, | : <br> :    CIVIL ACTION FILE NO. <br> : <br> : <br> : |
| Plaintiffs, | :    **COMPLAINT – CLASS ACTION** <br> : |
| v. | : <br> :    **JURY TRIAL DEMANDED** |
| GREAT AMERICAN POWER, LLC and NEW WAVER POWER, LLC | : <br> : <br> : |
| Defendants. | : |

_____/

**Preliminary Statement**

1.     Plaintiffs Jon Frey, Andrew Perrong, and Stewart Abramson bring this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2.     The Plaintiffs allege that Great American Power, LLC ("Great American Power") commissioned automated telemarketing calls to them and other putative class members without their prior express written consent. The calls were

also made to some individuals despite their presence on the National Do Not Call Registry. These calls were made pursuant to an arrangement between Great American Power and New Waver Power, LLC ("New Waver Power"), a telemarketer for Great American Power.

3.    This Class Action Complaint also relates to Great American Power's conduct of making telemarketing calls through third parties in the absence of an adequate "do not call" policy or training. Because telemarketing campaigns generally place calls to hundreds, thousands, or even millions of potential customers *en masse*, Plaintiffs bring this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Defendants.

4.    A class action is the best means of obtaining redress for the Defendants' wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5.    Plaintiff Jon Frey is a citizen of Pennsylvania.

6.    Plaintiff Stewart Abramson is a citizen of Pennsylvania.

7. Plaintiff Andrew Perrong is a citizen of Pennsylvania.

8. Defendant Great American Power, LLC is a limited liability company with its principal place of business at 2959 Cherokee Street, St 202 in Kennesaw, GA, 30144, and a registered agent of Stuart Mones at 750 Hammond Drive, Bldg. 12, Suite 200, Sandy Springs, GA, 30328.

9. Defendant New Waver Power, LLC is a limited liability company with a principal place of business at 10843 Britoak Ln. in Houston, TX 77079, with a registered agent of United States Corporation Agents, Inc. at 9900 Spectrum Dr. in Austin, TX 78174. New Waver Power contracted with Great American Power in this District to make the telemarketing calls at issue in this case.

**Jurisdiction & Venue**

10. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

11. The Court has personal jurisdiction over Great American Power because of their registration with the State of Georgia. In addition, Great American Power maintains its principal place of business in Georgia.

12.     The Court has personal jurisdiction over New Waver Power because they engaged in nationwide telemarketing conduct. Furthermore, it entered into a contractual relationship with Great American Power in this District.

13.     Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated calls were commissioned from this District and because the relationship between the Defendants was formed and occurred in this District.

## TCPA Background

14.     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry.  In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

The TCPA Prohibits Automated Telemarketing Calls to Cellular Telephones and Phones that Are Charged for Each Call

15.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called

party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…or any service for which the called party is charged for the call.." *See* 47 U.S.C. § 227(b)(1)(A). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

16. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

17. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

18. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing

the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991,* 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

<u>The National Do Not Call Registry</u>

19.     The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.  *See* 47 C.F.R. § 64.1200(c)(2).

20.     A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

21.     The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted.  47 U.S.C. § 227(c)(5); 47 C.F.R.

§ 64.1200(c)(2).

The TCPA's Requirement That Entities Have Sufficient Policies
In Place Prior to Making Telemarketing Calls

22.    The TCPA specifically required the FCC to "initiate a rulemaking

proceeding concerning the need to protect residential telephone subscribers'

privacy rights to avoid receiving telephone solicitations to which they object." 47

U.S.C. § 227(c)(1).

23.    The FCC was instructed to "compare and evaluate alternative methods

and procedures (including the use of … company-specific 'do not call systems

…)" and "develop proposed regulations to implement the methods and procedures

that the Commission determines are most effective and efficient to accomplish

purposes of this section." *Id.* at (c)(1)(A), (E).

24.    Pursuant to this statutory mandate, the FCC established company-

specific "do not call" rules. *In the Matter of Rules and Regulations Implementing

the Telephone Consumer Protection Act of 1991*, 7 FCC Rcd. 8752 (Oct. 16, 1992)

("TCPA Implementation Order").

25.    These regulations are codified at 47 CFR 64.1200(d)(1)-(7).

26.    Specifically, these regulations require a company to keep a written

policy, available upon demand, for maintaining a do-not-call list, train personnel

engaged in telemarketing on the existence and use of its internal do-not-call list, and record and honor "do not call" requests for no less than five years from the time the request is made. 47 CFR § 64.1200(d)(1, 2, 3, 6).

27.     This includes the requirement that "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity can be contacted." 47 C.F.R. 64.1200(d)(4).

28.     These policies and procedures prohibit a company from making telemarketing calls unless they have implemented these policies and procedures. 47 CFR 64.1200(d).

29.     Accordingly, all telemarketing calls violate the TCPA, unless Defendant can demonstrate that it has implemented the required policies and procedures.


The Growing Problem of Automated Telemarketing

30.     "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls*

(July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

31.     "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

32.     In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

33.     *The New York Times* recently reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-

money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Him*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-him-1530610203.

34.    Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

35.    According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 at a rate of 168.8 million per day. www.robocallindex.com (last visited May 17, 2019). YouMail estimates that 2019 robocall totals will exceed *60 billion calls*. *See id.*

36.    The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data (last visited May 17, 2019).


**Additional Factual Allegations**

Call to Plaintiff Abramson

37.     Plaintiff Abramson's telephone number, (412) 362-XXXX, is registered to a cellular telephone service.

38.     Mr. Abramson was called by New Waver Power, or a vendor it used, on April 1, 2019.

39.     The Caller ID on the call was from (724) 337-6467.

40.     The Caller ID number (724) 337-6467 was not a working number.

41.     When Mr. Abramson answered the call, there was a distinctive click and a pause.

42.     This click and pause is a telltale sign of a predictive dialer.

43.     The click and pause signifies the algorithm of the predictive dialer operating: the predictive dialer dials thousands of numbers at once, and only transfers the call to a live telemarketing agent after a human being has answered the call.

44.     As a result, the predictive dialer shifts the burden of wasted time from the calling agents to the call recipients.

45.     A predictive dialer is an ATDS as that term is defined by the TCPA.

46.     Because of the predictive dialer, Plaintiff was initially greeted with dead air for the call, and then finally, after a significant delay, a live telemarketing agent came on the line.

47.     Eventually, a telemarketing agent named "Lisa Riley" attempted to sell the Plaintiff Great American Power services.

Calls to Plaintiff Frey

48.     Plaintiff Frey's telephone numbers, (215) 634-79XX and (215) 634-77XX, are assigned to a service that is charged for each call.

49.     Mr. Frey's telephone numbers are used for residential purposes only.

50.     Mr. Frey's residential telephone numbers were on the National Do Not Call Registry for more than 31 days prior to the receipt of the first call advertising Great American Power goods or services.

51.     Mr. Frey's residential number (215) 634-79XX has been his residential number for over 20 years.

52.     Mr. Frey's residential number (215) 634-77XX was acquired in 2015 and is used as a personal fax line for the infrequent times when he needs to send a fax and is otherwise connected to his telephone.

53.     Mr. Frey was called by New Wave Power, or a vendor it used, on (215) 634-77XX on April 23, 24, 25, 26 and May 4, 2019.

54.     Mr. Frey was called by New Wave Power, or a vendor it used, on (215) 634-79XX on April 30, 2019.

12

55.     When Plaintiff answered the calls, there was a distinctive click and a pause.

56.     This click and pause is a telltale sign of a predictive dialer.

57.     The click and pause signifies the algorithm of the predictive dialer operating, the predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

58.     As a result, the telemarketing activity shifts the burden of wasted time to call recipients.

59.     A predictive dialer is an ATDS as that term is defined by the TCPA.

60.     Because of the predictive dialer, Plaintiff was greeted with dead air for the call and then finally a live person came on the line.

61.     The Caller ID on the call was from (716) 215-2671.

62.     This is a non-working number.

63.     To program a non-working Caller ID typically takes a computer program associated with ATDS equipment.

64.     After picking up the first three calls and hearing the dead air, Mr. Frey hung up the phone.

65.     On the fourth call, an "Adam Smith" identified himself.

66.     Mr. Smith did not identify his company, although he was advertising energy services.

67.     The Plaintiff was not interested and asked Mr. Smith to place him on the do-not-call list.

68.     Unfortunately, the calls continued.

69.     On the fifth call, Mr. Frey spoke to an agent named "Jacob", and again asked to be put on the do-not-call list and asked for a copy of the do-not-call policy.

70.     During the middle of this request, Mr. Frey was hung up on.

71.     On the sixth call, the Plaintiff participated in the telemarketing sales pitch and verified that Great American Power was being promoted.

72.     After the Plaintiff received the calls, he wrote to Great American Power, who identified New Wave Power as the company associated with his calls.

Calls to Plaintiff Perrong

73.     Plaintiff Perrong's telephone number, (215) 947-XXXX, is assigned to a service that is charged for each call.

74.     Plaintiff Perrong's telephone number, (215) 338-XXXX, is assigned to a service that is charged for each call.

75.     Both telephone numbers are used for residential purposes only.

76.     Both telephone numbers were on the National Do Not Call Registry for more than 31 days prior to the receipt of the first call advertising Great American Power goods or services.

77.     Mr. Perrong was called by Great American Power, or a vendor it used, to his number (215) 947-XXXX on May 8 (three times) and on May 14, 2019, and to his number (215) 338-XXXX twice on May 15, 2019.

78.     When Plaintiff answered the May 8 and May 15 calls, there was a distinctive click and a pause.

79.     This click and pause is a telltale sign of a predictive dialer.

80.     The click and pause signifies the algorithm of the predictive dialer operating, the predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

81.     As a result, the telemarketing activity shifts the burden of wasted time to call recipients.

82.     A predictive dialer is an ATDS as that term is defined by the TCPA.

83.     Because of the predictive dialer, Plaintiff was greeted with dead air for the call and then finally a live person came on the line.

84.     The Caller ID on the May 8 and May 15 calls came from a non-working number, or a number that was not associated with Great American Power.

85.     To program a non-working Caller ID typically takes a computer program associated with ATDS equipment.

86.     After picking up the first May 8 call, the Plaintiff only heard dead air.

87.     After picking up the second May 8 call, the caller asked Mr. Perrong a series of questions and hung up on him.

88.     On the third call, Mr. Perrong identified the defendant by completing the verification process.

89.     On May 13, 2019, the Plaintiff called and e-mailed the Defendant to rescind all purported agreements, to request to be placed on its Do Not Call list, and to request a copy of its Do Not Call policy.

90.     On the first May 15, 2019 call, the caller asked Mr. Perrong a series of questions and hung up on him.

91.     On the second May 15, 2019 call, Mr. Perrong again completed a verification process to identify the company that was calling him, which was again Great American Power, or a vendor working on its behalf.


Common Allegations

92. Plaintiffs Frey, Perrong, and Abramson are each a "person" as defined by 47 U.S.C. § 153(39).

93. Great American Power has been fined at least once for unlawful telemarketing practices. *See* https://www.mcall.com/news/watchdog/mc-great-american-power-fine-watchdog-20170426-story.html (Last Visited May 18, 2019, archived at https://archive.is/gJ1Zw).

94. Plaintiffs and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiffs and the class.

**Great American Power's Liability for New Waver Power's Conduct**

95. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

96.     In its January 4, 2008 ruling, the FCC likewise held that a company

on whose behalf a telephone call is made bears the responsibility for any

violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an

autodialed or prerecorded message call sent to a consumer by a third party on

another entity's behalf under 47 U.S.C. § 227(b)).

97.     In fact, the Federal Communication Commission has instructed that

sellers such as Great American Power may not avoid liability by outsourcing

telemarketing to third parties, such as New Waver Power:

> [A]llowing the seller to avoid potential liability by outsourcing its
> telemarketing activities to unsupervised third parties would leave
> consumers in many cases without an effective remedy for telemarketing
> intrusions. This would particularly be so if the telemarketers were
> judgment proof, unidentifiable, or located outside the United States, as
> is often the case. Even where third-party telemarketers are identifiable,
> solvent, and amenable to judgment limiting liability to the telemarketer
> that physically places the call would make enforcement in many cases
> substantially more expensive and less efficient, since consumers (or law
> enforcement agencies) would be required to sue each marketer
> separately in order to obtain effective relief. As the FTC noted, because
> "[s]ellers may have thousands of 'independent' marketers, suing one or
> a few of them is unlikely to make a substantive difference for consumer
> privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

98.     On May 9, 2013, the FCC released a Declaratory Ruling holding that

a corporation or other entity that contracts out its telephone marketing "may be

18

held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

99.    Great American Power is liable for the New Waver Power telemarketing calls.

100.    First, Great American Power hired New Waver Power to originate new business using telemarketing calls.

101.    Second, Great American Power controls the day to day activities of its telemarketing entities.

102.    Great American Power restricts the geographic location that its telemarketing entities can call.

103.    Great American Power also instructs the telemarketing entities on certain numbers that it should (and should not) call.

104.    Third, Great American Power knew (or reasonably should have known) that New Waver Power was violating the TCPA on its behalf and failed to take effective steps within its power to force the telemarketer to cease that conduct. Any reasonable seller that accepts telemarketing call leads from lead generators

---

[1]    *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

would, and indeed must, investigate to ensure that those calls were made in compliance with TCPA rules and regulations.

105.   Indeed, as mentioned above, Great American Power has previously been fined for the actions of third party telemarketers.

106.   Finally, the May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46).  Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

**Class Action Allegations**

107.   As authorized by Rule 23(b)(2) or (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of classes of all other persons or entities similarly situated throughout the United States.

108.   The classes of persons Plaintiffs propose to represent are tentatively defined as:

**Autodialed Class:** All persons in the United States who, from four years prior to the filing of this action: (1) Defendants (or an agent acting on behalf of Defendants) called, (2) using the same or similar dialing equipment used to call Plaintiffs, (3) on their cellular telephones or to a telephone line that is charged for each call for substantially the same reason Defendants called Plaintiffs, and (4) for whom Defendants claim (a) they obtained prior express written consent in the same manner as Defendants claim they obtained prior express written consent to call Plaintiffs, or (b) Defendants do not claim to have obtained prior express written consent.

**National Do Not Call Registry Class**: All persons in the United States who, from four years prior to the filing of this action: (1) Defendants (or an agent acting on behalf of Defendants) made (2) two or more telemarketing calls (3) promoting Defendants' products or services; (4) to a residential phone number that was listed on the National Do Not Call Registry for at least 30 days before the first call; and (5) within any twelve-month period.

**Internal DNC Class**: All persons in the United States who from four years prior to the filing of this action: (1) Defendants (or an agent acting on behalf of Defendants) called (2) with two or more telemarketing calls in a 12-month period.

109.    Excluded from the Classes are counsel, the Defendants, and any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

110.    The Classes as defined above are identifiable through the Defendants' dialer records, other phone records, and phone number databases.

111. The potential members of each Class number at least in the hundreds. Individual joinder of these persons is impracticable.

112. Plaintiffs Frey, Abramson, and Perrong are members of the Autodialed Class. Plaintiffs Frey and Perrong are members of the National Do Not Call Registry Class and Internal DNC Class.

113. There are numerous questions of law and fact common to Plaintiffs and to the proposed Classes, including but not limited to the following:

(a) whether Defendant utilized an automatic telephone dialing system to make its calls to the members of the Autodialed Class;

(b) whether Defendant systematically made multiple telephone calls to Plaintiff Perrong and members of the National Do Not Call Registry class;

(c) whether Defendant made calls to Plaintiff and members of the Classes without first obtaining prior express written consent to make the calls;

(d) Whether Defendant maintained a written "do not call" policy;

(e) Whether Defendants maintained a "do not call" list;

(f) Whether Defendant trained its employees or agents engaged in telemarketing on the existence and usage of any "do not call" policy;

(g) Whether Defendant recorded or honored "do not call" requests;

(h) whether Defendant's conduct constitutes a violation of the TCPA; and

      (i) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

114.   Plaintiffs' claims are typical of the claims of class members.

115.   Plaintiffs are adequate representatives of the classes because their interests do not conflict with the interests of the classes, they will fairly and adequately protect the interests of the classes, and they are represented by counsel skilled and experienced in class actions, including TCPA class actions.

116.   Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendants and/or their agents.

117.   The likelihood that individual members of the class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

118.   Plaintiffs are not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

# FIRST CAUSE OF ACTION

**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs and the Autodialed Class)**

119.   Plaintiffs repeat the prior allegations of this Complaint and incorporate them by reference herein.

120.   The foregoing acts and omissions of Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, with an autodialer to the Plaintiff's cellular telephone.

121.   The Defendants' violations were negligent, willful, or knowing.

122.   As a result of Defendants' and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the Class presumptively are entitled to an award of between $500 and $1,500 in damages for each and every call made.

123.   Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making autodialed calls, except for emergency purposes, to any cellular telephone number in the future.

## SECOND CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiffs Frey and Perrong and the National Do Not Call Registry Class)**

124.   Plaintiffs Perrong and Frey repeat the prior allegations of this Complaint and incorporates them by reference herein.

125.   The Defendants violated the TCPA by (a) initiating telephone solicitations to persons and entities whose telephone numbers were listed on the Do Not Call Registry, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

126.   The Defendants' violations were negligent and/or knowing.

127.   As a result of the Defendants' violations of the TCPA, 47 U.S.C. § 227(c)(5), Plaintiffs and members of the Class are entitled of an award of up to $500 in damages for each call made in violation of this section. The Court may award up to $1,500 if the violation was found to be "willful or knowing".

128.   Plaintiffs and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making calls advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry.

## THIRD CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227)
### (On Behalf of Plaintiffs Perrong and Frey and the Internal DNC Class)

129.   Plaintiffs Perrong and Frey repeat the prior allegations of this Complaint and incorporates them by reference herein.

130.   Defendant placed numerous calls for telemarketing purposes to Plaintiff's and Internal Class Members' telephone numbers.

131.   Defendant did so despite not having a written policy pertaining to "do not call" requests.

132.   Defendant did so despite not having such a policy available "upon demand."

133.   Defendant did so despite not training its personnel on the existence or use of any internal "do not call" list.

134.   Defendant did so despite not recording or honoring "do not call" requests.

135.   Defendant placed two or more telephone calls to Plaintiffs Perrong and Frey and Internal Class Members in a 12-month period.

136.   Plaintiff and Internal DNC Class Members are entitled to an award of $500 in statutory damages telephone call pursuant to 47 U.S.C. § 227(c)(5).

137. Plaintiff and Internal DNC Class Members are entitled to an award of treble damages in an amount up to $1,500 telephone call, pursuant to 47 U.S.C. § 227(c)(5)

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Classes, prays for the following relief:

A. Certification of the proposed Classes;

B. Appointment of Plaintiffs as representatives of the Classes;

C. Appointment of the undersigned counsel as counsel for the Classes;

D. A declaration that Defendant and/or its affiliates, agents, and/or other related entities' actions complained of herein violate the TCPA;

E. An order enjoining Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf making calls advertising their goods or services, except for emergency purposes, to any number on the National Do Not Call Registry.

F. An order enjoining Defendants and/or its affiliates, agents, and/or other persons or entities acting on Defendants' behalf from making autodialed calls, except for emergency purposes, to any cellular telephone number in the future.

G.	An award to Plaintiffs and the Classes of damages, as allowed by law;

and

H.	Orders granting such other and further relief as the Court deems

necessary, just, and proper.

JURY DEMAND

Plaintiff requests a jury trial as to all claims of the complaint so triable.

Dated: May 29, 2019	PLAINTIFFS, on behalf of themselves
and others similarly situated,

By: _/s/ Jason Doss_
Jason Doss
Georgia Bar No. 227117
Email: jasondoss@dossfirm.com
THE DOSS FIRM, LLC
The Brumby Building
127 Church Street, Suite 220
Marietta, GA 30060
Telephone: (770) 578-1314
Facsimile: (770) 578-1302

Anthony Paronich (*pro hac vice* to be filed)
Email: anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Telephone: (617) 485-0018
Facsimile: (508) 318-8100

Matthew R. Wilson (*pro hac vice* to be filed)

Email:  mwilson@meyerwilson.com
Michael J. Boyle, Jr. (pro hac vice to be filed)
Email:  mboyle@meyerwilson.com
MEYER WILSON CO., LPA
1320 Dublin Road, Suite 100
Columbus, OH 43215
Telephone:  (614) 224-6000
Facsimile:  (614) 224-6066

*Attorneys for Plaintiffs*

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1.C & 7.1.D

Pursuant to L.R. 7.1.D, I certify that this document has been prepared with

14-point, Times New Roman font, approved by the Court in L.R. 5.1.C.

_/s/  Jason Doss_____